IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: DIET DRUGS (PHENTERMINE/<br>FENFLURAMINE/DEXFENFLURAMINE)<br>PRODUCTS LIABILITY LITIGATION | ) <br> ) <br> ) <br> ) | MDL NO. 1203 |
| THIS DOCUMENT RELATES TO: | ) <br> ) | |
| CYNTHIA RIGHETTI | ) <br> ) | CIVIL ACTION NO. 07-20144 |
| v. | ) <br> ) | |
| WYETH, INC., f/k/a American<br>Home Products Corporation,<br>WYETH-AYERST PHARMACEUTICALS,<br>INC., f/k/a Wyeth Laboratories,<br>Inc. | ) <br> ) <br> ) <br> ) <br> ) | |

**MEMORANDUM IN SUPPORT OF SEPARATE PRETRIAL ORDER NO. 8206**

Bartle, C.J.                                              June 16, 2009

Wyeth, Inc. and Wyeth Pharmaceuticals (collectively "Wyeth") move to preclude plaintiff's expert witness, Dr. Steven Kawut, M.D., from testifying in the trial of this matter. Wyeth also seeks to prevent the plaintiff and her counsel from consulting any further with Dr. Kawut. Wyeth asserts that Dr. Kawut was previously retained to consult with the law firm of Arnold & Porter LLP, national counsel for Wyeth in connection with litigation involving fenfluramine and dexfenfluramine, and was privy to confidential and privileged information during the course of that employment.

I.

Dr. Kawut is the Herbert Irving Assistant Professor of Clinical Medicine at Columbia University College of Physicians and Surgeons, as well as an Assistant Professor in the Joseph L. Mailman School of Public Health.  See Ex. A to Pl.'s Resp.  Dr. Kawut was retained as an expert in this matter by the plaintiff's attorneys in 2007 and authored a report, dated March 31, 2008, setting forth his opinion as to the etiology, diagnosis and prognosis of Ms. Righetti's pulmonary arterial hypertension.

According to Wyeth, this case does not represent Dr. Kawut's first involvement in the diet drug litigation.  Wyeth asserts that it initially contacted Dr. Kawut for the purpose of retaining him as a consultant in a diet drug case in October, 2006.  Peter Tomaras, a partner at the law firm of Wildman Harrold LLP and co-counsel for Wyeth in the case of Bojorquez v. Wyeth, states in his declaration submitted in support of Wyeth's present motion that he and his associate, Bill Barnes, personally contacted Dr. Kawut for the purpose of retaining him as an expert consultant.  See Tomaras Decl., ¶ 2.  Mr. Tomaras declared that Dr. Kawut was retained, reviewed case materials in the Bojorquez litigation, and discussed his opinions with Mr. Tomaras on three or four occasions.  Id. at ¶ 3.  Mr. Tomaras and Dr. Kawut also discussed Wyeth's "theories of the case, general and case specific defenses in diet drug litigation and Dr. Kawut's opinions regarding the plaintiff's medical condition."  Id.  Mr. Tomaras attests that he disclosed to Dr. Kawut "themes" from his

-2-

prior experience with the diet drug litigation, as well as "potential strategies for addressing the opinions of other experts." Id. Confidential work product applicable to the diet drug litigation as a whole was shared with Dr. Kawut. Id.

Along with Mr. Tomaras, Stephan McConnell, a partner at the law firm of Dechert LLP and co-counsel for Wyeth in the Bojorquez matter, also submitted a declaration in support of Wyeth's present motion. In it, he attests that he also spoke to Dr. Kawut about confidential and privileged matters. Specifically, during a November 15, 2006 conference call among several attorneys representing Wyeth in diet drug cases, Mr. McConnell and Dr. Kawut "talked at length about how the plaintiff's symptomatology fit with Wyeth's defensive theories, our strategies for addressing the opinions of other experts and recurrent patterns I had observed in diet drug cases." See McConnell Decl., ¶ 3.

Dr. Kawut was listed as a testifying expert witness for Wyeth in the Bojorquez case, but another expert was ultimately substituted. See Tomaras Decl., ¶ 4. According to Mr. Tomaras, one of the reasons for withdrawing Dr. Kawut as a testifying expert was Wyeth's desire to prevent the disclosure of sensitive information that was disclosed to him. Id. at ¶ 4. Dr. Kawut did not write an expert report in the Bojorquez litigation and was never deposed. See McConnell Decl., ¶ 4.

On June 28, 2007, Dr. Kawut signed a letter agreement with Wyeth to serve as a consultant for Wyeth in yet another diet

drug case.   See Ex. D to Wyeth's Mot. to Exclude Pl.'s Expert.

The letter sets forth the "basic terms of our agreement":

> For you to consult with us on this matter, it
> may be necessary for us to disclose to you
> legal theories, attorney work product or
> other privileged, confidential, or
> proprietary communications or information.
> During and after the period of your
> engagement, you may not disclose
> communications or other information disclosed
> to you in connection with your engagement to
> any person or entity unless such disclosure
> is authorized by Arnold & Porter or ordered
> by a court.

It further provides:

> Whether or not the agreement is terminated,
> you may not work for or represent any other
> person or entity in connection with legal
> proceedings involving fenfluramine or
> dexfenfluramine.

Anand Agneshwar, a partner at Arnold & Porter, attests

that he explained the meaning of the confidentiality provisions

of this letter agreement to Dr. Kawut.   See Agneshwar Decl., ¶ 6.

At that point, Dr. Kawut had not disclosed to Mr. Agneshwar any

contacts he may have had with any plaintiff in the diet drug

litigation.   Id. at 5.

Upon receipt of the signed letter agreement, medical

records were sent to Dr. Kawut for review.   However, a month

later, in July, 2007, Dr. Kawut informed Mr. Agneshwar he had

already reviewed records on behalf of a plaintiff in a diet drug

case.   Id. at ¶ 8.   In addition, Mr. Agneshwar learned that same

month that Dr. Kawut was designated as an expert witness by the

plaintiff in the McDougal v. Wyeth litigation, another diet drug

case.  Id. at ¶ 9.  Upon learning of Dr. Kawut's previous
consultation for Wyeth, the plaintiff's attorney in the McDougal
case withdrew him as a witness.  Id. at ¶ 10.

        Dr. Kawut states in an unverified letter entitled "To
Whom it may concern", attached as Exhibit A to the plaintiff's
response, that he was contacted by the law firm of Sill & Medley
in December, 2007 to review the medical records of Cynthia
Righetti.  See Ex. A, ¶ 2.  In that unverified letter, he further
states that he "did not notice language [in the June 28, 2007
Wyeth letter agreement] indicating the expectation that my
consulting would be exclusively for Wyeth[.]"  On April 1, 2008,
Dr. Kawut was designated a case specific expert witness by
Cynthia Righetti in the instant matter.

                              II.

        Federal courts possess the inherent authority to
disqualify an expert witness in limited circumstances.  Greene,
Tweed of Delaware, Inc. v. DuPont Dow Elastomers, L.L.C., 202
F.R.D. 426, 428 (E.D. Pa. 2001); In re Orthopedic Bone Screw
Prods. Liab. Litig., No. MDL 1014, 1995 WL 925673 (E.D. Pa.
May 5, 1995).  A two-pronged test has been formulated to
determine whether an expert should be disqualified because the
expert has previously worked for the adversary and acquired
confidential information during such employment.  Greene, 202
F.R.D. at 428.  First, the court must determine whether it was
"objectively reasonable for the first party who claims to have
retained the consultant ... to conclude that a confidential

relationship existed." <u>Orthopedic Bone</u>, 1995 WL 925673 at *3.
Second, the court must determine whether the adversary disclosed
confidential or privileged information to the expert that is
relevant to the pending litigation. <u>Greene</u>, 202 F.R.D. at 428.
In order to disqualify an expert witness, there must be
affirmative answers to both of these inquiries. <u>Id</u>. at 429.
Wyeth, as the party seeking disqualification, bears the burden of
showing the existence of a confidential relationship and the
exchange of confidential or privileged information to the expert
witness. <u>Id</u>. For purposes of this showing, mere "conclusory or
*ipse dixit* assertions" will not suffice. <u>Id</u>.

        Here, Wyeth argues that it was objectively reasonable
for it to believe that it had entered into a confidential
relationship with Dr. Kawut as evidenced by the series of in-
depth conversations its attorneys had with him. The declarations
of Messrs. Tomaras and McConnell both attest that confidential
information was shared with Dr. Kawut, including case theories,
defenses and strategies, as well as themes running through the
diet drug litigation as a whole. <u>See</u> Tomaras Decl., ¶ 3;
McConnell Decl., ¶ 3. Furthermore, the letter agreement between
Dr. Kawut and Wyeth explicitly states that confidential and
privileged information, including legal theories, may be
disclosed to him in the course of his consulting for Wyeth. In
this regard, it prohibits Dr. Kawut from disclosing this
information and from working for or representing any other party
in the fenfluramine or dexfenfluramine litigation. Based on this

evidence, it is clear that Wyeth had an objectively reasonable basis to believe that it had entered into a confidential relationship with Dr. Kawut.

Second, the declarations of Wyeth's attorneys attest that confidential information was disclosed to Dr. Kawut during the course of his consulting. These declarations from officers of the court are buttressed by the signed letter agreement, which expressly contemplates the potential disclosure of confidential information to Dr. Kawut.

In response, Dr. Kawut states in his June 3, 2008 letter "To whom it may concern," that he has never discussed with "lawyers for either side legal strategies, past or present litigation, trial preparation or any other topic that could distract me from my role of reviewing medical records and published literature in an impartial and unbiased scientific matter." See Ex. A to Pl.'s Resp. He also states incredulously that he "did not notice language [in the June 28, 2007 Wyeth letter agreement] indicating the expectation that my consulting would be exclusively for Wyeth[.]" This recent "To whom it may concern" letter was not signed under oath and, consequently, it lacks any evidentiary weight.

Given the evidence submitted by Wyeth, we find that confidential information was disclosed by Wyeth's attorneys to Dr. Kawut in the course of his consulting relationship with Wyeth.

Accordingly, we will enter an Order granting the motion of Wyeth to preclude Dr. Kawut from testifying for the plaintiff in this matter or from consulting any further with the plaintiff's attorneys.